United States Courts
Southern District of Texas
FILED
JUL 27 2006
Michael N. Milby, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

H 06 2478

| | | |
|---|---|---|
| GARY BRADFORD, | § | |
| Plaintiff | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| BOARD OF REGENTS OF THE UNIVERSITY | § | |
| OF HOUSTON and JAY GOGUE, WILLIAM | § | |
| MUNSON, ABEL GARZA, JACQUELINE | § | |
| HAWKINS, CHERYL AMUSO, ~~SHIRELY~~ YU, | § | |
| in their official capacities, *SHIRLEY* | § | |
| Defendants | § | |

## ORIGINAL COMPLAINT

Plaintiff Gary Bradford respectfully files this complaint and would show the court as follows:

STATEMENT OF CLAIMS

1. Plaintiff Gary Bradford complains of Defendants' violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§12131-12134, as they pertain to Defendants Jay Gogue, William Munson, Abel Garza, Jacqueline Hawkins, Cheryl Amuso, and Shirley Yu, in their official capacities, and violations of Section 504 of the Rehabilitation Act ("Section 504"), as they pertain to Defendants Board of Regents of the University of Houston and Defendants Jay Gogue William Munson, Abel Garza, Jacqueline Hawkins, Cheryl Amuso, and Shirley Yu, in their official capacities, which discriminated against Mr. Bradford and prevented him from equally accessing educational opportunities at the University of Houston. Defendants failed to provide reasonable accommodations for Mr. Bradford and administered policies that fail to protect students with disabilities from discrimination, in violation of the law.

2. Plaintiff seeks injunctive and declaratory relief, attorney's fees, and litigation expenses.

JURISDICTION AND VENUE

3. This action is brought pursuant to Title II of the ADA, Section 504 of the Rehabilitation

Act, and the Fourteenth Amendment of the United States Constitution. Jurisdiction is conferred on this court by 28 U.S.C. §§1331.

4. Defendants' actions and the events giving rise to this claim occurred in Houston, Texas. Accordingly, venue is proper in this Court pursuant to 28 U.S.C. §1391(b).

PARTIES

5. Plaintiff Gary Bradford, 42, is a resident and citizen of Houston, Texas. He is an individual with a disability who requires a wheelchair for mobility. Mr. Bradford was a student in good standing at the University of Houston during the Fall 2005 semester. He is a "qualified individual with a disability" within the meaning of Title II of the ADA, and an "otherwise qualified individual with a disability" within the meaning of Section 504 of the Rehabilitation Act.

6. Defendant Board of Regents of the University of Houston is the entity responsible for the University of Houston. Defendant has a legal duty to ensure the University of Houston does not discriminate against individuals with disabilities. Defendant is a public entity within the meaning of Title II of the ADA, and a recipient of federal funding for purposes of Section 504. Defendant may be served process by serving Gary Mathisen, Executive Administrator at University of Houston System, Athletics/Alumni Center, 3100 Cullen Blvd, Suite 205, Houston, TX 77204-6601.

7. Defendant Jay Gogue, in his official capacity as the Chancellor and President of the University of Houston, has a legal duty to ensure that the University of Houston does not discriminate against individuals with disabilities. Defendant is a public entity within the meaning of Title II, and a recipient of federal funding for purposes of Section 504. Defendant may be served process at Office of the President, University of Houston, 212 E. Cullen Building, Houston, TX 77204-2018.

8. Defendant William Munson, in his official capacity as the Dean of Students of the

University of Houston, promulgates policies that are applicable to students as provided in the Student Handbook. Defendant has a legal duty to ensure that the University of Houston does not discriminate against individuals with disabilities. Defendant is a public entity within the meaning of Title II, and a recipient of federal funding for purposes of Section 504. Defendant may be served process at Dean of Students Office, University Center, Room 252, 4800 Calhoun Rd, Houston, TX 77204.

9. Defendant Abel Garza, in his official capacity as the Director of the Office for Affirmative Action at the University of Houston, is the designated ADA coordinator for the university and is responsible for ensuring all university policies comply with applicable disabilities laws. Defendant has a legal duty to ensure that the University of Houston does not discriminate against individuals with disabilities. Defendant is a public entity within the meaning of Title II, and a recipient of federal funding for purposes of Section 504. Defendant may be served process at Office of Affirmative Action, University of Houston, 153 Student Services Center 2, Houston, TX 77204-3020.

10. Defendant Jacqueline Hawkins, in her official capacity as the Director of the Academic Accommodations Evaluation Committee (AAEC) at the University of Houston, is responsible for evaluating student accommodation requests and administering policies for recommended accommodations. Defendant has a legal duty to ensure that University of Houston does not discriminate against individuals with disabilities. Defendant is a public entity within the meaning of Title II, and a recipient of federal funding for purposes of Section 504. Defendant may be served process at Educational Psychology Department, Farish Hall, Room 491, 4800 Calhoun Rd., Houston, TX 77204.

11. Defendant Cheryl Amuso, in her official capacity as the Director of the Center for Students with Disabilities (CSD) at the University of Houston, is responsible for administering policies related to students with disabilities by recommending policies for students with disabilities.

Defendant has a legal duty to ensure that the University of Houston does not discriminate against individuals with disabilities. Defendant is a public entity within the meaning of Title II, and a recipient of federal funding for purposes of Section 504. Defendant may be served process at Justin Dart, Jr. Center for Students with Disabilities, CSD Building #568, Room #110, University of Houston, Houston, TX 77204-3022..

12. Defendant Shirley Yu, in her official capacity as a professor at the University of Houston, has the authority to administer and thereby create university policy on academic accommodations. Defendant has a legal duty to ensure that the University of Houston does not discriminate against individuals with disabilities. Defendant is a public entity within the meaning of Title II, and a recipient of federal funding for purposes of Section 504. Defendant may be served process at Educational Psychology Department, Farish Hall, Room 465, 4800 Calhoun Rd., Houston, TX 77204.

## STATEMENT OF FACTS

13. Plaintiff Gary Bradford was enrolled at the University of Houston for the Fall 2005 semester. He was a college senior expecting to graduate in the Spring of 2006. He was a student in good standing and has never had disciplinary action taken against him.

14. Mr. Bradford is a 41 year-old individual with a disability. Diagnosed with the rare genetic impairment, Franconia's Syndrome, Mr. Bradford does not have arms and his hands are joined only at his shoulders. He has rickets that limit his mobility, requiring the use of a power wheelchair. Mr. Bradford also suffers from acute hypertension, seizures, and immune deficiencies.

15. Upon his enrollment at the University of Houston, Mr. Bradford registered with the university's Center for Students with Disabilities (CSD).

16. The CSD works with the university's Academic Accommodations Evaluations

Committee (AAEC) to verify each student's disability, by reviewing medical records and other disability-related documents. The CSD and AAEC then recommend a list of reasonable accommodations for the student. The AAEC's accommodation form states that the accommodations are given to "equalize [the] student's chances for academic success". Recommendations are reinstated yearly.

17. On February 2, 2006, the AAEC and CSD verified Mr. Bradford's disability and recommended a list of reasonable accommodations tailored for his needs that were applicable through the Fall 2005 semester. The recommended accommodations for Mr. Bradford included, among other things, the following: Extra set of notes from classmate or instructor; Extended testing time (up to double-time) for all exams; Use of computer for essays and essay exams; Occasional extension of due dates (not to include term assignments); Occasional exceptions to absentee/tardiness policies.

18. The AAEC accommodation recommendations for Mr. Bradford were signed by Defendant Cheryl Amuso, Director of the CSD, and Defendant Jacqueline Hawkins, Chair of the AAEC.

## ACCOMMODATION DENIED BY PROFESSOR

19. Mr. Bradford enrolled into a Social Sciences Writing Intensive course during the Fall 2005 semester, taught by Defendant Shirley Yu. The course was a prerequisite for his graduation.

20. On the first day of class, on or about August 25, 2005, Mr. Bradford requested an accommodation that had been recommended by the university's AAEC. He asked the course's teaching assistant, Karena Valkyrie, for notes from the instructor, requesting a copy of the professor's slides used during lecture. Mr. Bradford also e-mailed Dr. Marilyn Pustejovsky, the assistant director for the Center for Students with Disabilities (CSD), to notify her about the request.

21. Several days later Mr. Bradford supplied Ms. Valkyrie with documentation that the request had been recommended by the AAEC.

22. On September 7, 2005, Ms. Valkyrie informed Mr. Bradford that Professor Yu had refused the request. No explanation of the reasons for the refusal was given.

23. Mr. Bradford asked Ms. Valkyrie if one of the teaching assistants for the class could provide notes. In Mr. Bradford's presence, Ms. Valkyrie asked the three other teaching assistants whether they would be willing to take notes for Mr. Bradford. Every assistant refused.

24. University of Houston policy allows professors to deny accommodation requests even after the accommodation has been recommended by the AAEC. The policy is expressed in the Student Handbook, promulgated by Defendant William Munson, Dean of Students.

25. University of Houston policies do not require professors to examine the medical records or other disability-related records of students with disabilities who are enrolled in their classes in order to determine whether the accommodation request is reasonable.

26. University of Houston policies do not require professors to provide written statements explaining their reasons for refusing accommodation requests.

27. According to the Student Handbook, students who are unsatisfied with decisions may take the matter to the Director of the relevant department or program and then to the Dean of the relevant college.

28. On or about September 12, 2005, Dr. Marilyn Pustejovsky, assistant director at the CSD, informed Mr. Bradford that the Director of CSD, Defendant Amuso, would take over the process of obtaining Mr. Bradford's accommodations.

29. Mr. Bradford never heard from Defendant Amuso on the matter.

30. On a later date in September, Dr. Pustejovky informed Mr. Bradford that took the matter

of Defendant Yu's refusal to provide accommodations to the head of the Educational Psychology Department where Defendant Yu works. The department head was Defendant Jacqueline Hawkins who is also be the Chair of the AAEC. Defendant Hawkins did not make a different decision.

31. Dr. Pustejovsky did not pursue the matter further by appealing to the dean. Dr. Pustejovsky informed Mr. Bradford that the decision on accommodations was left to the professor.

32. Mr. Bradford did not have adequate notes for Defendant Yu's class. He was unable to take sufficient notes for himself and fearing he would not succeed in the class, he withdrew from it.

### ACCOMMODATION DENIED BY CSD & TEACHING ASSISTANT

33. The CSD provides a computer center for students with disabilities to take exams on computers rather than undergo written examinations for their classes.

34. On September 20, 2005, Mr. Bradford was scheduled to take an exam at the CSD for his Entr 3310 class.

35. On several previous occasions, Mr. Bradford had picked up exams from his professors and took them to CSD only to find that CSD could not schedule them. Therefore on the day of the exam on September 20, 2005, Mr. Bradford e-mailed Karen Mouton-Butler, a secretary at CSD in charge of the testing, to verify that the test was present and to schedule the examination.

36. Mr. Bradford did not receive a response from Ms. Mouton-Butler.

37. On the next day of September 21, 2005, the university was closed due to Hurricane Rita and did not reopen until September 30, 2005.

38. On September 30, 2005, Mr. Bradford emailed Ms. Mouton-Butler to enquire about the exam. She called the teaching assistant for the class, Daisy Durham.

35. The teaching assistant, Ms. Durham, refused to allow Mr. Bradford to take the test.

39. On the same day, Mr. Bradford attempted to call the adjunct professor, Ken Jones. The phone call was intercepted by Ms. Durham who reiterated her position.

40. Mr. Bradford received a "0" grade for the exam.

41. Discouraged by the failure of the university to accommodate his disabilities, Mr. Bradford withdrew from all his classes before the closing of the Fall 2005 semester. He has not attended the university since then and has yet to graduate with his degree.

## BUILDING INACCESSIBILITY

42. Mr. Bradford was seeking a Bachelor of Arts in Music at the University of Houston.

43. The music department holds its classes at the John and Rebecca Moore School of Music, located on the University of Houston campus at 120 School of Music Building, 4800 Calhoun Road, Houston, TX 77204.

44. The John and Rebecca Moore School of Music is a multi-million dollar facility on the University of Houston campus, built within the last ten years.

45. At the time of construction, the building had one accessible door for wheelchairs, located at the main entrance of the building. The door was open only for performances and locked at all other hours, including most normal school hours. After receiving complaints about the door, another accessible door was added to the building.

46. The second accessible entrance did not function at any time while Mr. Bradford was a student at the University of Houston. To attend his classes in the building, Mr. Bradford was forced to wait for other students to open the door for him.

## CAUSES OF ACTION

### I. Violations of Title II of ADA

47. In passing the ADA, Congress identified some 43,000,000 Americans as having one or

more disabilities and found that discrimination against individuals with disabilities continues to be a serious and pervasive social problem. *See* 42 U.S.C. § 12101(a)(1)-(2).

48. Congress found that discrimination against individuals with disabilities persists in many critical areas, including public accommodation, education, and access to public services. 42 U.S.C. § 12101(a)(3).

49. Congress further found that individuals with disabilities continually encounter various forms of discrimination, including the discriminatory effects of architectural barriers, failures to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, and relegation to lesser services, programs, activities, benefits or opportunities. 42 U.S.C. §12101(a)(5). .

50. The purpose of the ADA is to provide a clear and comprehensive national mandate to eliminate discrimination against individuals with disabilities and to establish clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities. 42 U.S.C. § 12101(a)(1)-(2).

51. Title II of the ADA, governing state and local governmental entities, protects persons from discrimination on the basis of disability by public entities. 42 U.S.C. §§ 12131-12134; 28 C.F.R. Part 35 § 35.101 *et seq*.

52. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subject to discrimination by any such entity." 42 U.S.C. § 12132.

53. Title II defines "public entity" in pertinent part as "any department, agency, special purpose district, or other instrumentality of a State or local government" 42 U.S.C. § 12131(1)(a).

54. As a student with a disability, Mr. Bradford is a "qualified individual with a disability.

Defendants are public entities within the meaning of Title II.

55. To avoid discrimination based on disability, Title II imposes an affirmative obligation upon public entities to make reasonable accommodations for disabled individuals. *Bennett-Nelson v. Louisiana Board of Regents*, 431 F.3d 448, 454-55 (5th Cir. 2005), *cert. denied*, 126 S. Ct. 1888 (2006).

56. Defendants discriminated against Mr. Bradford by failing to provide him with reasonable accommodations in violation of Title II. Defendants' policies were discriminatory by giving professors the option to deny accommodations even after they had been recommended by the university's Academic Accommodations Evaluation Committee. As a result, Mr. Bradford was denied equal access to the education provided by the University of Houston and the opportunity to succeed in his coursework.

57. The regulations under Title II of the ADA specifically address the need and the method for providing reasonable accommodations.

58. Defendants' policies that authorize professor discretion to deny reasonable accommodations do not comply with the following federal regulations:

    a. 28 C.F.R. §35.130(b)(7) which requires a public entity to make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to avoid discrimination on the basis of disability.

    b. 28 C.F.R. §35.130(b)(3) which requires a public entity not to use methods of administration that have the effect of discriminating against individuals with disabilities or that have the purpose or the effect of defeating or substantially impairing the accomplishment of the objectives of the public entity's program with regards to individuals with disabilities.

    c. 28 C.F.R. §35.164(a) which requires the head of a public entity, or her/his designee, to

consider all the resources available before reaching conclusions about reasonable accommodations and must provide a written statement of the reasons for reaching that conclusion.

d. 28 C.F.R. §35.164 which requires the public entities that deny reasonable accommodations to take alternative actions that would to the maximum extent possible ensure that individuals with disabilities receive benefits or services provided by the entity.

e. 28 C.F.R. §35.107(b) which requires that grievance procedures adopted and published by the public entity must provide prompt and equitable resolution of complaints.

59. Defendants further violated Title II by failing to maintain the only accessible door to the John and Rebecca Moore School of Music building in an operable working condition, as required under 28 C.F.R. 35.133.

## II. Violation of Section 504

60. Section 504 states, "No otherwise qualified person with a disability in the United States...shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program of activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

61. Plaintiff is an otherwise qualified person within the meaning of Section 504. Defendants are a program that receives federal funding within the meaning of Section 504.

62. Section 504 imposes an affirmative obligation upon public entities to make reasonable accommodations for disabled individuals. *Bennett-Nelson v. Louisiana Board of Regents*, 431 F.3d 448, 454-55 (5th Cir. 2005), *cert. denied*, 126 S. Ct. 1888 (2006).

63. Defendants discriminated against Mr. Bradford by failing to provide him with reasonable accommodations in violation of Title II. Defendants' policies were discriminatory by giving professors the option to deny accommodations even after they had been recommended by the

-11-

university. As a result, Mr. Bradford was denied equal access to the education provided by the University of Houston and the opportunity to succeed in his coursework.

64. The regulations under Section 504 specifically address the need and the method for providing reasonable accommodations.

65. Defendants' policies that authorize professor discretion to deny reasonable accommodations fail to comply with the following federal regulations:

a) 34 C.F.R. 104.4(b)(1) which prohibit the discriminatory action of affording a person with a disability with an opportunity to participate in a service that is not equal to that afforded to others.

b) 34 C.F.R. 104.4 (b)(4) which requires recipients to not use methods of administration that have the effect of discriminating against individuals with disabilities or that have the purpose or the effect of defeating or substantially impairing the accomplishment of the objectives of the public entity's program with regards to individuals with disabilities.

c) 34 C.F.R. 104.7(b) which requires that grievances procedures which are adopted to incorporate appropriate due process standards that provide prompt and equitable resolution of complaints.

66. The rights, remedies, and causation from Section 504 are duplicative and the same as Title II of the ADA for claims involving academic accommodations and architectural barriers. *Bennett-Nelson*, 431 F.3d 448, 454 (5th Cir. 2005), *cert. denied*, 126 S. Ct. 1888 (2006).

67. The same violations of Title II of the ADA, described above, therefore are herein incorporated as violations of Section 504 and extend to all Defendants including the Defendant Board of Regents of the University of Houston.

INJUNCTION

68. Plaintiff and others with physical disabilities will continue to experience unlawful

discrimination as a result of Defendants' violations of, and failures to comply with, the ADA and Section 504.

69. Plaintiff and other students with disabilities will suffer irreparable harm if injunctive relief is not granted. As such, injunctive relief is necessary to order Defendants to ensure that, at the University of Houston, by practice and policy: 1) students with disabilities are provided with reasonable accommodations that have been recommended by the university's AAEC; 2) reasonable accommodations to qualified students with disabilities cannot be denied by the discretion of individual faculty members; 3) grievance procedures provide prompt and equitable resolution of complaints concerning accommodations; and 4) the John & Rebecca Moore School of Music Building's wheelchair-accessible doors are maintained in operable working condition, as required by law.

## DECLARATORY JUDGMENT

70. Plaintiff is entitled to a declaratory judgment concerning Defendants' violations of Title II of the ADA and Section 504, as set forth above, and further specifying his rights and the rights of other students with disabilities at the University of Houston to: 1) be given reasonable accommodations that have been recommended by the university's Academic Accommodations Evaluation Committee; 2) be given reasonable accommodations that cannot be denied by the discretion of individual faculty members; 3) have grievance procedures that ensure prompt and equitable resolutions of complaints concerning accommodations; and 4) have the wheelchair-accessible doors at the John & Rebecca Moore School of Music be maintained in operable working condition.

## ATTORNEY'S FEES AND COSTS

71. Plaintiff is entitled to reasonable attorney's fees, litigation costs, and court costs, as

allowed by the ADA, 42 U.S.C. §12133, and as allowed by Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a).

PRAYER FOR RELIEF

Plaintiff therefore respectfully requests that the Court:

A. Issue a permanent injunction to Defendants, including its agents, servants, and employees, and all persons in active concert with them, directing that the University of Houston must: 1) Provide reasonable accommodations that have been recommended by the university's Academic Accommodations Evaluations Committee; 2) Remove policies that give discretion to individual faculty members to deny reasonable accommodations; 3)Ensure that its grievance policies provide prompt and equitable resolutions for complaints concerning accommodations; and 4) Maintain accessible doors in operable working condition at the John & Rebecca Moore School of Music building. forever enjoin Defendants from further discriminating against Plaintiff and others with physical disabilities, in violation of the ADA, Section 504, Chapter 121, and Article 9102;

B. Enter a declaratory judgment, specifying Defendants' violations of the ADA and Section 504, and declaring Plaintiffs' rights to: 1) Be given reasonable accommodations that have been recommended by the university's Academic Accommodations Evaluation Committee; 2) Be given reasonable accommodations that cannot be denied by the discretion of individual professors; 3) Have grievance procedures that ensure prompt and equitable resolutions of complaints concerning accommodations; 4) Have the wheelchair-accessible doors at the John & Rebecca Moore School of Music be maintained in operable working condition.

C. Order Defendants to pay Plaintiffs' attorney's fees, litigation expenses, and costs; and,

D. Grant such other and additional relief to which Plaintiffs may be entitled.

Dated: July 26, 2006.

Respectfully submitted,

_____
James C. Harrington
State Bar No. 09048500

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis
Austin, Texas 78741-3438

(512) 474-5073 [telephone]
(512) 474-0726 [facsimile]

ATTORNEYS FOR PLAINTIFFS