UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GARY BRADFORD, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-06-2478 |
| | § | |
| BOARD OF REGENTS OF THE | § | |
| UNIVERSITY OF HOUSTON, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

**I.**

Before the Court is the defendants', the Board of Regents of the University of Houston, and Jay Gogue, William Murnson, Abel Garza, Jacqueline Hawkins, Cheryl Amuso, and Shirley Yu, in their official capacities, motion for summary judgment in this case. The plaintiff, Gary Bradford, has filed a response and the motion, attachments, response and briefs are before the Court. The Court determines that the defendants' motion should be granted.

**II.**

The essential facts underlying this litigation are not in dispute. The plaintiff, an adult, suffers with TAR syndrome[1], although diagnosed with Fanconi syndrome. The plaintiff does not have arms and his hands are joined at his shoulders. He has limited mobility and, therefore, uses a power wheelchair. Hence, it is undisputed that he is an individual with a disability within the meaning of Section 504 of the Rehabilitation Act.

---

[1] TAR syndrome is a rare genetic disorder characterized by the absence of the radius bone in the forearm and a dramatically reduced platelet count. This condition leads to bruising and potentially life-threatening hemorrhage.

This suit concerns the plaintiff's requests for class participation and building use accommodations at the University of Houston.

The plaintiff first became a student at the University in 1982. Before he completed the course requirements for the conferring of a degree, the plaintiff dropped out and pursued a career in music. However, in 2004, the plaintiff reenrolled in the University to pursue a bachelor's degree in music. The plaintiff reached an agreement with the University personnel concerning the course curriculum that would lead to that degree. However, prior to starting his curriculum in the Spring of 2004, the plaintiff met with the University Center for Students with Disabilities and addressed the plaintiff's needs, as they concern accommodations and the University's ability to provide them. The result was that the plaintiff would be accommodated as follows:

(1) Use of priority seating in classroom

(2) Extra set of notes from classmate or instructor

(3) Use of tape recorder in classroom (student will provide)

(4) Extended testing time (up to double-time) for essay exams

(5) Use of computer for essays and essay exams

(6) Occasional extension of due dates (not to include term assignments)

(7) Occasional exceptions to absentee/tardiness policies

(8) Use of scribe for Scantron sheets

(9) Breaks as needed

(10) A classmate to play piano in order to check music homework (with instructor approval).

**III.**

The parties agree that three events give rise to this litigation. The first event concerned the plaintiff's request for a copy of the professor's PowerPoint presentation for his HDFS 1300 course. This course was one of the required courses on the plaintiff's curriculum. The plaintiff sought these materials under the "extra set of notes from classmates or instructor" accommodation. The second event concerned a grade of zero that the plaintiff received in his ENTR 3310 class. The plaintiff unsuccessfully sought to change his scheduled exam in his ENTR 3310 course to a later date so that it would coincide with the day of his HDFS 1300 exam. It is undisputed that the plaintiff was unsuccessful in this regard. Moreover, the date to which he sought to have the ENTR 3310 exam moved was a day when the entire campus was closed due to a hurricane. Later, the teaching assistant refused to allow the plaintiff to take the test.

The third and final claim that the plaintiff makes concerned wheelchair accessibility to the School of Music. The plaintiff claims that the wheelchair accessibility did not function on the occasions that he sought entrance to attend his classes. According to the plaintiff, in order to gain entrance, he would wait on other students to open a door. The defendants dispute that the School of Music does not provide access accommodation. In this regard, they claim that in 2004, when the plaintiff's concerns were voiced, an automatic door opener was installed at the main entrance as well as a buzzer so that the plaintiff might alert the staff that the door needed to be opened. They also point out that the plaintiff does not state that he was late for class or was otherwise denied access. The Court will address these claims in turn.

# IV.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted. *Id.* at 249-50; *see also Shields v. Twiss*, 389 F.3d 142, 149-50 (5th Cir. 2004).

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 - 87 (1986); *Adams v. Travelers Indem. Co. of Connecticut,* 465 F.3d 156, 163 (5th Cir. 2006). Where the moving party has met its Rule 56(c) burden, the nonmovant must come forward with "specific facts showing that there is a *genuine issue for trial."* *Matsushita*, 475 U.S. at 586-87 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); and *Adams*, 465 F.3d at 164. To sustain the burden, the nonmoving party must produce evidence admissible at trial showing that reasonable minds could differ regarding a genuine issue of material fact. *Anderson*, 477 U.S. at 250-51; 255; *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). In deciding a summary judgment motion, "[t]he evidence of the nonmovant

is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

The plaintiff brought this suit pursuant to Title III of the Americans with Disabilities Act ["ADA"], 42 U.S.C. §§ 12131-12134, and Section 504 of the Rehabilitation Act ["Section 504"]. The Court is of the opinion that a single analysis is appropriate whether the claim is an ADA or Section 504 claim. *See Pace v. Bogalusa City School Bd.*, 403 F.3d 272, 287-88 (5th Cir. 2005). In this regard, to establish a *prima facie* case, the plaintiff must prove that: (a) he is a qualified individual within the meaning of the appropriate statute; (b) he was or is being excluded or denied participation in a benefit, service, program or activity that the University offers; and, (c) the exclusion or denial is by reason of his disability. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004).

## V.

The evidence is undisputed that the plaintiff is a qualified individual within the meaning of the statute. However, there is no evidence that the plaintiff was excluded or denied participation in his HDFS 1300 and ENTR 3310 classes. In fact, the parties entered into accommodations that were, by all accounts, agreed upon. In particular, and regarding the PowerPoint presentation, there was no agreement that the professor's notes would be the sole accommodation. The evidence is undisputed that the accommodation included notes from a classmate. The evidence shows that the plaintiff was informed that he could have a fellow student make notes for him or that he might tape sessions or use his computer to record notes and lectures. In fact, a student in the class assisted the plaintiff. And, the plaintiff reported that the student's notes and his own work would be

satisfactory. There is no evidence that the plaintiff ever reported that the process did not satisfy the accommodation.

In addition, there is no evidence that the plaintiff suffered a loss in the quality of the notes provided, or that his ability to prepare for exams was affected as a result of his disability. The evidence shows that the accommodations agreed were provided. It is not the province of the plaintiff to dictate the nature and/or character of the accommodation, particularly where the evidence shows that the accommodation demanded would compromise the course materials and perhaps the integrity of the lectures. The evidence fails to show that the plaintiff was excluded or denied participation in his HDFS 1300 class.

The same conclusion applies to the plaintiff's demand for a re-scheduled exam in his ENTR 3310 class. The evidence shows that the plaintiff was unsuccessful in his attempt to postpone the exam. By his own admission the plaintiff did not clear his plan with the professor of the class. And, because he failed to clear the postponement prior to the exam, the ADA and Section 504 are not implicated. The plaintiff's rights under the ADA and Section 504 would have been triggered only had the request been effectively made. The evidence is undisputed that no request was effected.

Next, the plaintiff complains that the School of Music building fails to meet the ADA requirement for accommodating persons with disabilities. The plaintiff asserts that his mobility impairment requires the defendants to make the building "readily accessible to and usable by individuals with disabilities. "The plaintiff argues that there is "no accessible entrance to the [performance] hall." An examination of the evidence shows that, contrary to the plaintiff's claim of "no accessible entrance," there is in fact a

permanent wheelchair ramp at the main entrance that leads to a bank of doors wide enough to accommodate a wheelchair. In addition, an automatic door opener was installed with a buzzer that permits members of the staff to open the automatic door when notified by the plaintiff or others that they seek assisted entry. Otherwise, the defendants argue, there is no evidence that the plaintiff has ever been denied access to the performance hall.

The defendants agree or concede that on occasion there have been operation issues concerning the automatic door opener. However, even these infrequent "glitches" have not resulted in the plaintiff failing to obtain access to the hall. The plaintiff does not dispute this fact. Instead, he argues that the building fails to fully comply with the ADA standards that permit *independent* entry. *See* 28 C.F.R. § 35.133(a) (2007). The plaintiff misreads the statute. The statute merely requires the University to provide reasonable accessibility and to ". . . maintain in operable working condition . . . equipment . . . that assists in that accessibility." In fact subpart (b) provides . . . "[T]his section does not prohibit isolated or temporary interruptions in services or access due to maintenance or repairs."

In the case at bar, there is no evidence that repair interruptions were more than mere isolated events, or that the interruptions were not due to legitimate repairs. The Court finds that the plaintiff's ADA building access claim is without merit. It is, therefore, ORDERED that the defendants' motion for summary judgment be, and it is GRANTED in its entire.

SIGNED and ENTERED this 28th day of November, 2007.

_____
Kenneth M. Hoyt
United States District Judge